LAMB LUMBER & IMPLEMENT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14242.   Promulgated March 9, 1927.

The evidence sustains petitioner's claim for a deduction from gross income for 1921 of certain amounts of debts ascertained to be recoverable only in part and charged off in part within the year.

*W. A. Burke, Esq.*, for the petitioner.
*W. F. Gibbs, Esq.*, for the respondent.

The Commissioner determined a deficiency of $620.63 for the calendar year 1921. Petitioner claims that the Commissioner erred in refusing to allow as a deduction from gross income the sum of $7,304.32, representing that portion of certain debts falling due within the year which it ascertained could not have been recovered and which it charged off within the year.

### FINDINGS OF FACT.

Petitioner is a North Dakota corporation with principal office and place of business at Whitman. During the calendar year 1921 certain accounts and notes due petitioner by various farmers became due and were not paid. These debts represented amounts due petitioner for farm equipment, supplies and grain sold and for threshing. Petitioner held various classes of real estate and chattel mortgages as security for these debts, which fell due during the year 1921, and particularly in October, November, and December of that year. Petitioner's officers were personally acquainted with all of the debtors, knew their financial status, and had full and complete knowledge of the amount and character of the property which they owned and the market price or value of the same.

During 1921 petitioner endeavored through the personal efforts of its officers to obtain payment of the amounts due it, without success. At the end of the year the debtors, all of whom were farmers, were without funds, due to the marked decline in the market for their

farm products; they had already reached the limit of their credit and were unable to borrow money. They were heavily in debt to banks, persons, and concerns other than petitioner. The only means by which petitioner could hope to recover any amount on the debts due it was to foreclose its mortgages on land, farm implements, horses and cattle, which mortgages in no individual case would have satisfied the debt due. Petitioner's officers made a personal investigation of the condition of the property on which it held mortgages and, based upon their knowledge of the amount which could be obtained from the sale thereof and upon their experience as a result of previous sales of similar property on foreclosure, petitioner determined that certain debts due it were recoverable only in part, and charged such debts off in part within the year as follows:

| Name of debtor. | Amount due. | Amount charged off. | Name of debtor. | Amount due. | Amount charged off. |
|---|---|---|---|---|---|
| Frank Demoray | $2,000.00 | $1,000.00 | Joe Maticek | $808.23 | $300.00 |
| Frank Horjuhi | 217 74 | 75.00 | Oscar Olson | 550.00 | 295.00 |
| Jacob Hongola | 1,120 20 | 400.00 | John C. Simmons | 2,242.00 | 1,000.00 |
| James Horjishi | 142.26 | 100.00 | Frank J. Strahe | 397.32 | 197.32 |
| Jos. F. Kalos | 1,537.00 | 200.00 | J. P. Shirek | 800.00 | 300.00 |
| John W. Kangas | 2,500.00 | 1,000.00 | John Lyckora | 375.00 | 375.00 |
| Wm. Kangas | 532.72 | 100.00 | John Vordra | 675.00 | 175.00 |
| Chas. Moilanen | 995.00 | 200.00 | R. B. Wilson | 188.25 | 50.00 |
| Wm. C. Moilanen | 2,300.00 | 1,500.00 | | | |

These debtors were grain farmers. They had very little live stock. The market value of land did not exceed $20 an acre; good farm horses and good cows sold for from $20 to $50 each. There was practically no market for farm implements. Gang plows and drills in first-class condition were sold at from $20 to $30 each, and old and worn equipment sold at prices much below this figure. The persons above mentioned were engaged in farming upon a small scale. Some of them held real estate in their own names which was heavily encumbered; others were tenant farmers. The machinery and equipment owned by them, on which petitioner held chattel mortgages, was old and worn and their horses and cows were old and of little value. The real estate mortgages held by petitioner were second, third, and fourth mortgages, and the amount of the prior mortgages held by others exceeded the market price or value of the land. Petitioner's judgment as to the portion of the debts that it could not recover was fully warranted by the facts known to it at the time, and subsequent events proved that the amounts charged off were conservative. In many cases petitioner recovered far less than it had estimated at the end of 1921 that it would.

Those portions of the debts listed above which petitioner charged off at the end of 1921 were worthless.

## OPINION.

LITTLETON: Section 213 (a) (5) of the Revenue Act of 1921 provides that in computing net income there shall be allowed as deductions debts ascertained to be worthless and charged off within the taxable year; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

The only means open to petitioner for recovery of any amount in respect of the debts hereinbefore listed was the foreclosure of the mortgages held by it. In many cases the property was subject to prior mortgages in amounts in excess of the value thereof. The facts known to petitioner at the end of 1921 showed that the debts, to the extent that they were charged off, were worthless and unrecoverable and that legal action to enforce payment would not have resulted in the satisfaction of the debts to the extent that they were retained upon the books. The evidence is in detail and goes fully into all the facts and circumstances surrounding each debt, and from a consideration thereof the Board is of the opinion that the total amount claimed by petitioner was properly ascertained to be worthless and charged off within the year and that the Commissioner erred in refusing to allow a deduction of that amount. Petitioner exercised reasonable and sound business judgment in ascertaining that these debts were recoverable only in part and in charging off the balance. In the *Appeal of Egan & Hausman Co.*, 1 B. T. A. 556, the Board said:

> In adjusting their accounts and debts business men are called upon to use sound business judgment and prudence and are justified in eliminating from their assets such accounts and debts as are past due and which they are satisfied that they can not realize upon within some reasonably determinable period. They do not have to await uncertain and future events, nor are they called upon to wait until some turn of the wheel of fortune may bring their debtors into affluence.

The debtors whose accounts are here involved were engaged in farming upon a small scale. They raised grain and had very little live stock. They had no income except in the fall of the year. For several years prior to 1920 farmers in this community had been fairly prosperous; financial conditions were good, values were inflated, and credits were extended generally and freely. Practically every mercantile business and bank held real estate and chattel mortgages far in excess of the sound value of the property. These were taken to protect credits extended on the basis of the inflated values and in keeping with the trend of the times. The decline in property values and of prices of farm products came in the winter of 1920 and continued downward during 1921. Farmers who had held grain for higher prices saw the price drop below the cost of production. Land

and farm property values dropped tremendously and continued to go down throughout the year 1921. Many farmers were heavily in debt and were completely wiped out. Only a few were solvent. The debtors listed herein were hopelessly insolvent at the closing months of 1921. There were men with families facing a North Dakota winter with little, if any, funds. There was no market for farm property and they had none that they could sell. Their property was mortgaged for a great deal more than the amount for which they could have sold it. There was no demand or market for the notes and mortgages which petitioner held. To have resorted to legal action with the necessary disproportionate expense in each case would have been folly. Had each debtor voluntarily turned over to petitioner the property on which it held the mortgage, it would have suffered a greater loss by accepting it. The cost of labor was high. The expense of moving and caring for the machinery and of caring for and feeding the live stock through a long winter would have exceeded their worth. There was no prospect that the property could be sold, if at all, for any better price in the spring of 1922. The fact is, if the property had been offered for sale in the fall or winter of 1921, or the spring of 1922, petitioner would have recovered far less than the amounts which it retained upon its books when making the charge-off here claimed as a deduction. The farmers carried on as best they could. There were many foreclosures and there was a great deal of used farm equipment on the market. Those few farmers who were in a sound financial condition were forced to retrench. They were making no profits and could not afford to increase their equipment beyond their immediate needs. Especially were they unwilling to invest in old and worn-out equipment and in live stock. The amounts which petitioner retained upon its books as being recoverable represent more than it could have recovered if it had enforced collection.

> *Judgment will be entered for the petitioner upon the issue raised on 20 days' notice, under Rule 50.*